148 So.2d 529 (1963)
DEERE & COMPANY, a Delaware corporation, Appellant,
v.
Mary Christina WATTS, Appellee.
No. 62-401.
District Court of Appeal of Florida. Third District.
January 8, 1963.
Rehearing Denied January 29, 1963.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, for appellant.
Nichols, Gaither, Beckham, Colson & Spence and Alan R. Schwartz, Miami, for appellee.
Before PEARSON, TILLMAN, C.J., and BARKDULL and HENDRY, JJ.
HENDRY, Judge.
The appellant, Deere & Company, a Delaware corporation, a defendant below, filed this interlocutory appeal seeking reversal of an order denying its motion to dismiss for lack of jurisdiction and insufficiency of process and service of process.
The appellee, Mary Christina Watts, brought an action for the wrongful death of her husband which occurred when a tractor manufactured by the appellant overturned on him. In her amended complaint she alleged, in part, that the appellant's tractor was negligently manufactured or designed and that appellant had breached its express and implied warranties of fitness.
*530 Service of process upon the appellant was made by serving the Secretary of State pursuant to §§ 47.16 and 47.30, Fla. Stat., F.S.A. Appellant filed its motion to dismiss, supported by affidavits, challenging the court's jurisdiction over it. Briefly stated, the appellant contended, as it does in this appeal, that it does no business in Florida; that its only tie with Florida is that its wholly owned subsidiary, John Deere Company of St. Louis, does business in Florida; that the two corporations are separate and distinct, each having its own directors, officers and employees and maintaining its own books and records; that it manufactures and sells certain farm machinery for its own account, some of which is purchased by John Deere Company of St. Louis for its own account; that it exercises no control over the operations of its subsidiary and is not subject to substituted service.
The appellee opposed the motion to dismiss on the grounds that John Deere Company of St. Louis is a "jobber or distributor" for appellant and does business with franchised dealers in Florida; that appellant owns all of the stock of John Deere Company of St. Louis and exercised a high degree of control over it; that under § 47.16(1) and (2), Fla. Stat., F.S.A.[1] appellant is presumed to be doing business in Florida and is amenable to service of process through the Secretary of State.
Additional facts are: appellant is a Delaware corporation with its principal office and place of business in Moline, Illinois; John Deere Company of St. Louis is a Missouri corporation with its principal office and place of business in St. Louis; appellant owns 100% of John Deere Company's stock and votes it at all stockholders' meetings; each company has its own Board of Directors, officers and employees but many hold offices in both corporations; while the books, accounts and records of the companies are kept separate and distinct, the financial statements of the appellant and its subsidiaries are consolidated in its annual reports and the subsidiaries are referred to therein as "Deere branches".
Since each case of this nature must be resolved on the basis of the special facts revealed by the record,[2] we call particular attention to the fact that John Deere Company of St. Louis is licensed to do business in Florida, sells farm and industrial equipment and machines to retail dealers in Florida selected by it and with whom contracts are made by it in Florida, extends credit to said dealers, and determines all questions relating to the collection or compromise of dealer accounts or farmer papers including the acceptance or rejection of farmer notes for credit to dealer accounts.
From these particular facts we are called upon to determine (1) whether § 47.16, Fla. Stat., F.S.A. authorizes substituted service of process upon the appellant through the Secretary of State and (2) if it does, is such service constitutional?
Section 47.16, Fla. Stat., F.S.A. was amended in 1957 (Laws 1957, Chapter 57-747) so as to broaden its scope and widen the concept of state jurisdiction over foreign corporations. Reference to the preamble reflects this attitude and purpose:
"Whereas, persons, firms and corporations in other jurisdictions are directly or indirectly furnishing millions *531 of dollars worth of tangible and intangible personal property to persons, firms and corporations in this state each year; and
"Whereas, litigation in both tort and contract frequently arises out of the purchase, lease, consignment, use and consumption of such property each year; and
"Whereas, the cost and expense of going to other jurisdictions, both national and international, frequently has the practical effect of denying all rights and remedies regarding such purchase, lease, consignment, use and consumption; and
"Whereas, it is just and fair that such litigation be conducted in this state rather than in a foreign jurisdiction * * *."
In our decision in Fawcett Publications, Inc. v. Rand, Fla.App. 1962, 144 So.2d 512, we held that the mere shipment of magazines by a foreign corporation to independent contractors in this state over whom it exercised no control did not submit said corporation to substituted services of process under § 47.16(1) or (2).
In the present case we find that the activities of John Deere Company of St. Louis in this state constitute doing business in this state within § 47.16(1). However, since we are concerned with the service of process upon the parent, appellant, we must go one step further and determine whether there was a sufficient tie between appellant and its subsidiary (John Deere Company of St. Louis) to find that appellant was indirectly doing business in Florida. We find and hold that under the facts presented John Deere Company is acting as the "jobber" or "distributor" through which appellant sells some of its products to corporations or firms in this state and accordingly, the appellant was amenable to the substituted service provided for by § 47.16(2).
In reaching the above conclusions, we relied heavily upon those facts which showed the extent of the subsidiary's activities within this state and the degree of control which the appellant was capable of exercising over the operations and policies of the subsidiary. We also felt impelled to give full effect to the legislative intent apparent in § 47.16(2).
Proceeding to the question of whether the service of process upon the appellant met the constitutional requirements of due process of law, we refer to the case of Berkman v. Anne Lewis Shops, Inc., S.D.N.Y. 1956, 142 F. Supp. 417, 422, aff'd, 2 Cir.1957, 246 F.2d 44.[3] This case was decided prior to the enactment of § 47.16(2) and held that under the old § 47.16, sales in Florida through a subsidiary corporation did not subject the parent company to substituted service of process. The language of the district court decision, however, indicated that had Florida enacted a statute authorizing such substituted service, it would be constitutional. The pertinent language is as follows:
"This is not to say that a statute might not constitutionally be drawn which would make the presence in a state of a wholly-owned subsidiary of a foreign corporation sufficient basis to assert jurisdiction over the parent company. All that the due process clause would require is that the defendant `have certain minimum contacts with [the territory of the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice"'". (Citing cases.)
In accordance with the language of the Berkman decision it is our opinion that the service of process upon the appellant, in conformity with our §§ 47.16 and 47.30, *532 Fla. Stat., F.S.A., met all the requirements of due process of law.
Accordingly, the order appealed is affirmed.
Affirmed.
NOTES
[1] § 47.16(1), Fla. Stat., F.S.A. provides that service of process may be obtained through the Secretary of State upon nonresident corporations which "operate, conduct, and engage in, or carry on a business or business venture" in this state.

§ 47.16(2) provides that, "Any person, firm or corporation which through brokers, jobbers, wholesalers or distributors sells, consigns, or leases, by any means whatsoever, tangible or intangible personal property, to any person, firm or corporation in this state, shall be conclusively presumed to be operating, conducting, engaging in or carrying on a business or business venture in this state."
[2] See Fawcett Publications, Inc. v. Rand, Fla.App. 1962, 144 So.2d 512.
[3] For a good general discussion of the development of this area of the law see: 13 U.Miami L.Rev. 205; 10 U.Fla.L.Rev. 235; 75 A.L.R. 1242.